## In re AIR CRASH DISASTER AT DETROIT METROPOLITAN AIRPORT ON AUGUST 16, 1987.

### MDL No. 742.

United States District Court,
E.D. Michigan, S.D.

Nov. 16, 1989.

See also, 130 F.R.D. 652.

Charles Brewer, Phoenix, Ariz., Stanley Chesley, Cincinnati, Ohio, Lee Kreindler, New York City, Gerald Lear and Thomas Meehan, Washington, D.C., and Richard Schaden, Birmingham, Mich., for Plaintiffs' Steering Committee.

Carroll E. Dubuc, Laxalt, Washington, Perito and Dubuc, Washington, D.C., for defendant Northwest Airlines.

John J. Hennelly, Bryan, Cave, McPheeters & McRoberts, Los Angeles, Cal., and Donald E. Shely, Dykema Gossett, Detroit, Mich., for defendant McDonnell Douglas.

### ORDER

JULIAN ABELE COOK, Jr., Chief Judge.

In an effort to advance their respective positions in the trial before this Court, two of the principal parties in the current litigation have filed pleadings which seek to have two prospective witnesses declared as experts. Specifically, on September 29, 1989, the Plaintiffs' Steering Committee (PSC) filed a "Motion For A Declaration That Hugh Waterman May Testify As An Expert Witness." Several days later (October 3, 1989), Northwest Airlines, Inc. (Northwest) filed a similar motion in which

it requested this Court to declare Everett Morris as an expert witness. The Defendant, McDonnell Douglas Corporation (MDC), and a Third–Party Defendant, United States of America, have filed pleadings in opposition to the two motions.[1] For the following reasons, this Court declines to issue a judicial declaration that Waterman and/or Morris may testify as an expert witness in the above-captioned multidistrict cause.

## I

Pursuant to the terms of Practice and Procedure Order Number 2, the PSC, Northwest and MDC were required to designate and publish prior to February 15, 1989(1) the identity of their expert witnesses, and (2) the subject matter about which each expert witness would testify. *See In re Air Crash Disaster at Detroit Metropolitan Airport on August 16, 1987*, MDL No. 742 (E.D.Mich. Dec. 16, 1988). One of those persons who was listed by the PSC as a proposed expert witness was Hugh Waterman, a former branch chief of aircraft systems in the Long Beach, California office of the Federal Aviation Administration (FAA). The PSC represents that Waterman, while employed by the FAA, was involved with the certification of the MD–80 aircraft. According to the PSC, "Waterman's testimony would cover Federal Aviation Regulations both generally and as they pertain to takeoff warning systems, and also the purpose and use of FMEA's." PSC's Motion for Declaration at 4 (Sept. 29, 1989).

Similarly, Northwest designated Everett Morris, former chief of the electrical, avionics and instruments section at the Long Beach, California FAA office, as an expert witness. Northwest submits that Morris "is to testify concerning, *inter alia*, (1) certification of the CAWS [Central Aural Warning System], DFGS [Digital Flight Guidance System] and circuit breakers; (2) whether these systems performed their intended functions and performed critical functions within the meaning of the Federal Aviation Regulations; and (3) safety, failure and similar analyses conducted by MDC and the adequacy of information supplied to the FAA by MDC with respect to the CAWS and DFGS." Northwest's Motion for Declaration at 3 (Oct. 3, 1989).

In separate letters, both of which were dated September 11, 1989, an attorney representing the United States informed the PSC and Northwest that his review of the deposition testimony of Waterman and Morris "indicates that [they] may be testifying in direct violation of 18 U.S.C. § 207(a), [Ethics in Government Act]." He also indicated that if the deposition testimony of Waterman and Morris is admitted into evidence in this case and deemed by the federal government to be a violation of Section 207, these two FAA employees may be subjected "to possible criminal and/or administrative sanctions."

Subsequent to their receipt of these letters, the PSC and Northwest moved for a declaration by this Court that Waterman and Morris may testify as expert witnesses without violating the provisions of the Ethics in Government Act.

## II

Pursuant to 18 U.S.C. § 207, former agency employees may be imprisoned for a period not to exceed two (2) years, and assessed a maximum fine of Ten Thousand Dollars ($10,000) for violating the following provisions:

Whoever, having been an officer or employee ... of any independent agency of the United States, ... after his employ-

---

1. This Court will neither examine nor consider the merits of an eleven page pleading, "The Plaintiffs' Steering Committee's Joint Reply to Oppositions to Motion for a Declaration that Hugh Waterman may Testify as an Expert Witness," which was submitted to this Court on November 2, 1989, well beyond the date of October 20, 1989 when the last responsive pleading was filed. This reply brief was filed in violation of Local Rule 17(i), which provides in part:

If a reply brief is filed, it shall be limited to 5 pages and shall be filed not more than 5 days after receipt of the response and not less than 3 Court days before oral argument if oral argument is scheduled.

Local Rule 17(i).

ment has ceased, knowingly acts as agent or attorney for, or otherwise represents, any other person (except the United States), in any formal or informal appearance before, or, with the intent to influence, makes any oral or written communication on behalf of any other person (except the United States) to—

(1) any ... court, ..., and

(2) in connection with any judicial or other proceeding, ... or other particular matter involving a specific party or parties in which the United States ... is a party or has a direct and substantial interest, and

(3) in which he participated personally and substantially as an offer or employee through decision, approval, disapproval, recommendation, the rendering of advice, investigation or otherwise, while so employed.

18 U.S.C. § 207(a). Section 207 also provides that "[n]othing in this section shall prevent a former officer or employee from giving testimony under oath, or from making statements required to be made under penalty of perjury." 18 U.S.C. § 207(h). The implementing regulation ostensibly adds the following gloss to the provisions of section 207(h):

A former Government employee may testify before any court, board, commission, or legislative body with respect to matters of fact within the personal knowledge of the former Government employee. This provision does not, however, allow a former Government employee, otherwise barred under 18 U.S.C. § 207(a), (b), or (c) to testify on behalf of another as an expert except: (1) To the extent that the former employee may testify from personal knowledge as to the occurrences which are relevant to the issues in the proceeding, including those in which the former Government employee participated, utilizing his or her expertise, or (2) in any proceeding where it is determined that another expert in the field cannot practically be obtained; that it is impracticable for the facts or opinions on the same subject to be obtained by other means, and that the former

Government employee's testimony is required in the interest of justice.

5 C.F.R. § 737.19(b).

Both the PSC and Northwest contend that section 207(h) permits Waterman and Morris to testify as experts in this litigation. As an alternative remedy, the movants argue that these experts should be allowed to testify under the terms of the above cited implementing regulation. Thus, the PSC and Northwest ask this Court to rule in advance that (1) Waterman and Morris may testify as expert witnesses during the trial, and (2) their testimony, if admitted, would not constitute a violation of the Ethics in Government Act.

This Court declines to rule on the merits of the pending motions because (1) the movants lack standing to initiate the instant request, and (2) the present posture of the record suggests that the issues are not ripe for a judicial interpretation, in that the parties have called upon this Court to issue a purely advisory opinion.

### III

According to the express provision of Section 2, Article III of the United States Constitution, the power of the federal courts is limited to "[c]ases" and "[c]ontroversies." *See Muskrat v. United States,* 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246 (1911). This limited grant of judicial authority has been construed to preclude the federal judiciary from issuing purely advisory opinions. *See Flast v. Cohen,* 392 U.S. 83, 96, 88 S.Ct. 1942, 1950, 20 L.Ed.2d 947 (1986) ("the oldest and most consistent thread in the federal law of justiciability is that the federal courts will not give advisory opinions") (citation omitted); *United States v. Fruehauf,* 365 U.S. 146, 157, 81 S.Ct. 547, 553, 5 L.Ed.2d 476 (1961) (courts may not hear cases that do not present "that clear concreteness provided when a question emerges precisely framed and necessary for decision from a clash of adversary argument exploring every aspect of a multifaced situation embracing conflict and demanding interests").

Article III, as well as other prudent considerations, mandate that a case must be

sufficiently "ripe" before a federal court may render a decision on the merits. *See Buckley v. Valeo,* 424 U.S. 1, 114, 117, 96 S.Ct. 612, 680, 681, 46 L.Ed.2d 659 (1976) (per curiam); *Molins PLC v. Quigg,* 837 F.2d 1064, 1068 (Fed.Cir.), *cert. denied,* 486 U.S. 1055, 108 S.Ct. 2822, 100 L.Ed.2d 923 (1988); *Postscript Enterprises, Inc. v. Westfall,* 771 F.2d 1132, 1136–37 (8th Cir. 1985); *Johnson v. Sikes,* 730 F.2d 644, 648 (11th Cir.1984). It has been long established that the federal courts shall not entertain the merits of an issue which focuses upon "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Thomas v. Union Carbide Agricultural Products Co.,* 473 U.S. 568, 580–81, 105 S.Ct. 3325, 3333, 87 L.Ed.2d 409 (1985) (quoting 13A C. WRIGHT, A. MILLER & E. COOPER, FEDERAL PRACTICE & PROCEDURE (CIVIL) § 3532.2, at 141 (West 1984)); *see also Arctic Corner, Inc. v. United States,* 845 F.2d 999, 1000–01 (Fed.Cir.1988) (Markey, C.J.). Indeed, the federal judiciary may not decide " 'case[s] ... of "a hypothetical or abstract character." ' " *Flast v. Cohen,* 392 U.S. 83, 100, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968) (*quoting Aetna Life Insurance Co. v. Haworth,* 300 U.S. 227, 240, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937)). The Supreme Court, in *Babbitt v. United Farm Workers National Union,* 442 U.S. 289, 297–98, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979) (citations omitted), stated:

> [t]he difference between the abstract question and a 'case and controversy' is one of degree, of course, and is not discernible by any precise test. The basic inquiry is whether the 'conflicting contentions of the parties ... present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract.

■ With regard to the motion *sub judice,* this Court believes that the issues, which the proponents seek to have resolved by this Court, are indeed "hypothetical or abstract." In essence, the movants have asked this Court to determine in advance whether the respective decisions of Waterman and Morris to testify as experts in this multidistrict litigation will subject them to criminal sanctions under the provisions of the Ethics in Government Act. However, any prosecution under section 207 has yet to materialize. In fact, the alleged potential prosecution will occur only if (1) Waterman and/or Morris decide to testify, (2) the prosecuting arm of the United States Government decides that their testimony, or any portion thereof, ostensibly violates the Ethics in Government Act and submits the issue to the grand jury, and (3) the grand jury issues an indictment in this matter.

On the basis of the record, the motions that are now pending before the Court, represent an effort by the moving parties to secure an advisory opinion as to the scope of a federal criminal statute. This Court believes that the instant dispute is nearly identical to the facts in *International Longshoremen's & Warehousemen's Union Local 37 v. Boyd,* 347 U.S. 222, 223–24, 74 S.Ct. 447, 448, 98 L.Ed. 650 (1954) (citations omitted), in which the Supreme Court stated:

> Appellants in effect asked the District Court to rule that a statute the sanctions of which had not yet been set in motion against individuals on whose behalf relief was sought, because an occasion for doing so had not arisen, would not apply to them if in the future such a contingency should arise. This is not a lawsuit to enforce a right; it is an endeavor to obtain a court's assurance that a statute does not govern hypothetical situations that may or may not make the challenged statute applicable. Determination of the scope and constitutionality of legislation in advance of its immediate adverse effect in the context of a concrete case involves too remote and abstract an inquiry for the proper exercise of the judicial function.

*See also Kleppe v. New Mexico,* 426 U.S. 529, 546, 96 S.Ct. 2285, 2295, 49 L.Ed.2d 34 (1976) ("We have often declined to decide important questions regarding 'the scope and constitutionality of legislation in advance of its immediate adverse effect in the context of a concrete case,' *Longshoremen*

*v. Boyd,* 347 U.S. 222, 224 [74 S.Ct. 447, 448, 98 L.Ed. 650] (1954); or in the absence of 'an adequate and full-bodied record.' *Public Affairs Press v. Rickover,* 369 U.S. 111, 113 [82 S.Ct. 580, 582, 7 L.Ed.2d 604] (1962)"); *Hotel & Restaurant Employees Union v. Smith,* 846 F.2d 1499, 1516–17 (D.C.Cir.1988) (Silberman, J., separate opinion) ("constitutional ripeness concerns are implicated '... when the dispute is so shapeless that the court is necessarily called upon to hypothesize regarding not only the *facts* of the dispute, but the very 'policy' or *rule* that is challenged; such is the very paradigm of an advisory opinion") (emphasis in original) (footnote omitted).[2]

Based on the foregoing, this Court will not issue a ruling on the merits when (1) the situation presented is purely hypothetical, and (2) its opinion in this civil action would neither be binding precedent nor with any practical legal effect in a subsequent criminal prosecution of Waterman and/or Morris.[3] Therefore, because the issues presented are not currently ripe for judicial review, this Court shall deny the movants' request to declare that Waterman and Morris may testify as experts in this civil dispute without fear of criminal prosecution or adverse administrative action.

## IV

In addition to the ripeness requirement, the case and controversy provision of Article III and prudential considerations mandate that the movants must have standing to pursue the issues in this motion. In *Secretary of State of Maryland v. J.H. Munson Co.,* 467 U.S. 947, 955, 104 S.Ct. 2839, 2846, 81 L.Ed.2d 786 (1984) (footnote omitted), the Supreme Court stated that prudential standing limitations disfavor "third party standing"—a situation in which a litigant asserts the legal rights of a third party—for the following reasons:

> "[T]he plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights of third parties." *Warth v. Seldin,* 422 U.S. 490, 499 [95 S.Ct. 2197, 2205, 45 L.Ed.2d 343] (1975) (citing *Tileston v. Ullman,* 318 U.S. 44 [63 S.Ct. 493, 87 L.Ed. 603] (1943); *United States v. Raines,* 362 U.S. 17 [80 S.Ct. 519, 4 L.Ed.2d 524] (1960); and *Barrows v. Jackson,* 346 U.S. 249 [73 S.Ct. 1031, 97 L.Ed. 1586] (1953). The reason for this rule is twofold. The limitation "frees the Court not only from unnecessary pronouncements on constitutional issues, but also from premature interpretations of statutes in areas where their constitutional application might be cloudy," *United States v. Raines,* 362 U.S., at 22 [80 S.Ct. at 523], and it assures the court that the issues before it will be concrete and sharply presented. See *Baker v. Carr,* 369 U.S. 186, 204 [82 S.Ct. 691, 703, 7 L.Ed.2d 663] (1962).[4]

**2.** Even if this Court concluded that an immediate threat of prosecution did exist in this case, which would ostensibly satisfy constitutional ripeness considerations, *see United States v. Lowell,* 557 F.2d 70, 73 (6th Cir.1977) (distinguishes *Boyd* by concluding that a case and controversy exists when "the government ... either has, or intends to, set in motion" the coercive conduct that is the subject of the request for a declaration); *see e.g., Poe v. Ullman,* 367 U.S. 497, 501, 81 S.Ct. 1752, 1754, 6 L.Ed.2d 989 (1961), the prudential ripeness standard arguably would not be satisfied since a "judicial appraisal of [this matter] is likely to stand on much surer footing ... than could be the case in the framework of the generalized challenge made here." *Toilet Goods Association v. Gardner,* 387 U.S. 158, 164, 87 S.Ct. 1520, 1524, 18 L.Ed.2d 697 (1967).

**3.** An adjudication of the instant motion in favor of the two movants will not preclude a subsequent indictment and prosecution of Waterman and/or Morris in a federal court.

**4.** This Court recognizes that "there are situations where competing considerations outweigh any prudential rationale against third-party standing." *Munson,* 467 U.S. at 947, 104 S.Ct. at 2839. First, "[w]here practical obstacles prevent a party from asserting rights on behalf of itself ... the Court has recognized the doctrine of *jus tertii* standing." *Id.* (emphasis in original) (citing *Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976)); *see also Barrows v. Jackson,* 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953). Second, the courts have modified prudential-standing considerations when first amendment rights are at issue. *See Broadrick v. Oklahoma,* 413 U.S. 601, 612, 93 S.Ct. 2908, 2915, 37 L.Ed.2d 830 (1973). Third, a third party may have standing to raise another person's legal rights when there exists a sufficient nexus between the rights of the litigant and the

In the case at bar, the movants have essentially challenged the application of a criminal statute to Waterman and Morris without demonstrating that these proposed witnesses are unable to pursue this matter on their own behalf. Indeed, the subject matter of the movants' request for a declaration focuses upon legal rights and interests that are unique to Waterman and Morris. Therefore, because the movants' request exemplifies a form of third party standing that is prohibited by prudential considerations, this Court concludes that they are not proper parties to initiate and prosecute the merits of whether the projected testimony of Waterman and Morris would violate the Ethics in Government Act.[5]

## V

Northwest contends that any justiciability concerns are misplaced and the requisite case and controversy requirements have been established because a determination by this Court that the intended testimony of Waterman and/or Morris would violate the Ethics in Government Act would effectively preclude the introduction of their testimony during the currently pending civil trial. In support of this contention, Northwest cites a federal rule of evidence which provides, in pertinent part, that "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress [or] by these rules...." *Fed.R.Evid.* 402. Northwest reasons that "[p]arties routinely and appropriately request and obtain pretrial rulings on the admissibility of evidence that might be excluded because of constitutional or statutory violations (for example, evidence resulting from search or seizures or wiretaps). Northwest's motion is of this type, and the Court indisputably has the

authority and the duty to issue the ruling requested by Northwest." Northwest's Reply Brief at 1 (Oct. 20, 1989) (footnote omitted).

Northwest's argument misses the mark. This Court has carefully reviewed the extensive legislative history which preceded the enactment and amendment of the Ethics in Government Act. In its examination, there is nothing within the legislative record which would suggest or intimate that the Congress intended this statute to serve as a statutory rule which would mandate the exclusion of otherwise relevant evidence from a civil trial. The stated purpose of the Act is as follows:

> The restrictions of [18 U.S.C. § 207] are imposed to insure government efficiency, eliminate official corruption, and promote evenhanded exercise of administrative discretion. Former officers should not be permitted to exercise undue influence over former colleagues, still in office, in matters pending before the agencies; they should not be permitted to utilize information on specific cases gained during government service for their own benefit and that of private clients. Both are forms of unfair advantage. Honest government, and decision made in an important manner, are the objectives of this Title.

> [The Ethics in Government Act] is an attempt to prevent corruption and other official misconduct before it occurs, as well as penalizing it once it is uncovered. The criminal sanctions of fine and imprisonment already in the statute and the administrative remedy we propose to add will, we are convinced, deter unlawful conduct and encourage officials to exercise a higher degree of caution in their subsequent activities as private citizens.

---

third party. *See Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965).

This Court notes, however, that these "competing considerations" are not present in the motion at bench.

**5.** This Court believes that constitutional standing limitations similarly prevents the movants from pursuing the instant motion. While the case of *Linda R.S. v. Richard D.*, 410 U.S. 614, 619, 93 S.Ct. 1146, 1149, 35 L.Ed.2d 536 (1973) is

not dispositive on this issue, the Supreme Court noted that its "prior decisions consistently hold that a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution." Citing, *Younger v. Harris*, 401 U.S. 37, 42, 91 S.Ct. 746, 749, 27 L.Ed.2d 669 (1971); *Bailey v. Patterson*, 369 U.S. 31, 33, 82 S.Ct. 549, 551, 7 L.Ed.2d 512 (1962); *Doe v. Ullman*, 367 U.S. 497, 501, 81 S.Ct. 1752, 1754, 6 L.Ed.2d 989 (1961).

A realistic potential for punishment and disciplinary action is an important mechanism.

S.REP. NO. 170, 95th Cong., 2d Sess. 31, *reprinted in* 1978 U.S.CODE CONG. & ADMIN.NEWS 4216, 4247. Moreover, this Court has not found, and neither of the movants have advanced any published pertinent case authority in which a court has concluded that this statute may be invoked in a civil trial for the purpose of precluding the inclusion of testimony into the record.

Contrary to the position of Northwest, it is clear to this Court that the Ethics in Government Act was not enacted for the purpose of limiting the use of relevant testimony which would ostensibly violate its prohibitions. The terms of section 207 should be contrasted with the rules, statutes and constitutional doctrines that require the exclusion of otherwise relevant evidence, such as Rule 32(a)(3) of the Federal Rules of Civil Procedure, Rule 15 of the Federal Rules of Criminal Procedure, Rules 407, 408, 409, 410, 411 and 412 of the Federal Rules of Evidence, Section 8693 of Title 10 of the United States Code, Sections 25(a)(10) and 205(a) of Title 11 of the United States Code, and various constitutional limitations that limit the admissibility of relevant evidence such as evidence obtained in violation of the Fourth Amendment, *see*

*Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), and incriminating statements obtained in violation of the Fifth or Sixth Amendment right to counsel, *see Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In contrast to these cited provision and doctrines, there is no indication in the statutory language or the history surrounding the enactment of the Ethics in Government Act that testimony elicited in violation of its terms may not be proffered in a civil action. Therefore, this Court will not read such an exclusionary rule into the congressional enactment in question.[6]

## VI

For the foregoing reasons, this Court declines the request of the PSC and Northwest to determine whether the intended expert testimony of Waterman and/or Morris violates the provisions of the Ethics in Government Act. This Court also notes that an objection, which seeks to preclude the introduction of testimony by Waterman and/or Morris on the basis that it ostensibly contravenes the Ethics in Government Act, will not be sustained because section 207 was not intended to serve as a basis for excluding relevant evidence in a civil proceeding under Rule 402. However, although this Court will not preclude the testimony of Waterman and Morris based

---

**6.** This conclusion is not altered by the result reached in *Nardone v. United States*, 302 U.S. 379, 58 S.Ct. 275, 82 L.Ed. 314 (1937), which this Court believes to be inapposite to the case *sub judice*. In *Nardone*, the criminal statute at issue, Section 605 of the Communications Act of 1934, provided that "no person not being authorized by the sender [of any interstate communication by wire] shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person." *Id.* at 381, 58 S.Ct. at 276 (*quoting* 47 U.S.C. § 605). The *Nardone* Court concluded that the "plain words" of the statute created a prohibition against providing testimony in contravention of its terms and that such evidence is inadmissible in a criminal trial. The Court reached this result even though the statute was silent as to the admissibility of such evidence.

The plain language of the Ethics in Government Act does not clearly prohibit the admissibility of testimony or evidence presented in violation of its prohibition. Rather, the statute merely states that should persons who violate its proscriptions may be subjected to criminal or

administrative sanctions. In fact, this Court believes that phraseology of the Ethics in Government Act is similar to the language of the Washington statute in issue in *Olmstead v. United States*, 277 U.S. 438, 468–69, 48 S.Ct. 564, 569, 72 L.Ed. 944 (1927) (*quoting* Remington Complied Statutes, 1922, § 2656–18), which provided that "[e]very person ... who shall intercept, read or in any manner interrupt or delay the sending of a message over any telegraph or telephone line ... shall be guilty of a misdemeanor." In addressing whether evidence obtained in violation of this statute should be deemed inadmissible, the Court stated:

This statute does not declare that evidence obtained by such interpretation shall be inadmissible, and by the common law ... it would not be. Whether the State of Washington may prosecute and punish federal officers violating this law ... is not before us.

*Id.* at 469, 48 S.Ct. at 569 (citation omitted). Although the *Olmstead* Court was construing common law rules of evidence, which certainly are no longer applicable at this time, the reasoning applies with equal force to the facts presented in this case.

on the terms of section 207, each of these witnesses should know that this decision does not, and will not, immunize them from the potential of criminal prosecution in the future.[7]

IT IS SO ORDERED.

---

7. Without expressing any opinion as to whether the testimony of these designated expert witnesses would violate the prohibitions of the Ethics in Government Act, this Court recommends to Waterman and Morris that each of them should seek the advice of counsel in determining the scope of their participation as expert witnesses in this case.