Robert J. YOUNG and Ruby Young, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. CIV.A. SA–96–CV–0075.

United States District Court,
W.D. Texas,
San Antonio Division.

Oct. 8, 1997.

Jeffrey Clarke Anderson, Law Offices of Jeffrey C. Anderson, San Antonio, TX, for plaintiffs.

Karen B. Norris, Assistant U.S. Attorney, San Antonio, TX, for defendant.

## ORDER

PRADO, District Judge.

On this date came to be considered the Defendant's Motion to Strike Designation of Expert Witnesses, filed September 3, 1996, the Plaintiffs' Response, filed September 9, 1996, and the Defendant's Reply, filed October 3, 1996. Also under consideration is the Plaintiffs' Motion to Compel, filed October 28, 1996, the Defendant's Response, filed November 12, 1996, and the Plaintiffs' Reply, filed November 15, 1996. After careful consideration, the Court will grant the Motion to Strike and deny the Motion to Compel.

### Facts and Procedural Posture

This is a medical malpractice case involving United States Department of the Navy physicians who gave treatment to Robert Young, one of the Plaintiffs. The Plaintiffs have attempted to designate Mr. Young's treating physicians as both fact and expert witnesses, but the Defendant has objected, arguing that the Code of Federal Regulations prohibits such a designation, and that treating physicians are not properly considered experts. Accordingly, the Defendant moved to strike the Plaintiffs' designation of expert witnesses with regard to these treating physicians. Moreover, during the

deposition of these witnesses, the Defendant instructed these witnesses not to answer certain questions, apparently because those questions called for an expert opinion. The Plaintiffs have moved to compel answers to those questions, arguing that the Defendant is attempting to assert a privilege which it does not possess.

### Analysis

In essence, the present motions ask three difficult questions. First, do policy considerations generally demand that a treating physician should not be considered an expert witness? Second, can a treating physician, even if not an expert, be asked questions which implicate his expertise? And finally, third, do the discovery provisions of the Federal Rules of Civil Procedure and the Federal Rules of Evidence prevail over privileges purportedly created by the Code of Federal Regulations? For the reasons described below, the Court finds that each of these questions must be answered affirmatively. This finding, as a practical matter, means that the Court will grant the Motion to Strike Designation of Expert Witnesses and deny the Motion to Compel.

I. *Private litigants may not compel a treating physician to act as an expert.*

■ In the absence of a statute to the contrary, a professional witness may not generally be compelled to testify as an expert at the request of a private litigant, as such testimony is a matter of contract or bargain. *See Karp v. Cooley,* 349 F.Supp. 827, 836–37 (S.D.Tex.1972); Fed.R.Civ.P. 45(c)(3)(B)(ii); 97 C.J.S. *Witnesses* § 16 (1957 & Supp.1997). In other words, just because a party wants to make a person work as an expert does not mean that, absent the consent of the person in question, the party generally can do so. *Karp,* 349 F.Supp. at 836–37; 97 C.J.S. *Witnesses* § 16 (1957 & Supp.1997). Additionally, it is a well-settled rule of law that employee-experts who acquire information for trial solely because they were actors or viewers with respect to the occurrences forming the subject matter of the lawsuit must be treated as ordinary fact witnesses, and *not* as experts. *See Dallas v. Marion Power Shovel*

*Co., Inc.,* 126 F.R.D. 539, 540–41 (S.D.Ill. 1989).

■ As applied to the medical profession, these discovery rules mean that a treating physician generally must be considered an ordinary fact witness, and should not be considered an expert unless the physician has been *specifically retained* to develop an expert opinion. *Salas v. United States,* 165 F.R.D. 31, 33 (W.D.N.Y.1995). *See Mangla v. University of Rochester,* 168 F.R.D. 137 (W.D.N.Y.1996); *Baker v. Taco Bell Corp.,* 163 F.R.D. 348 (D.Colo.1995). Thus, in the present case, the Plaintiffs have wrongly designated treating physicians as experts. These witnesses acquired knowledge of this case by direct observation, not later consultation. *Dallas,* 126 F.R.D. at 539–41. They have not been specifically retained to develop expert opinions, as neither the Plaintiffs nor the Defendant has paid them to become experts for purposes of this litigation. *Salas,* 165 F.R.D. at 33. Furthermore, the Court finds none of the special circumstances which would warrant compelling these witnesses to act as experts. *See* Fed.R.Civ.P. 45. *See also Karp v. Cooley,* 349 F.Supp. at 836–37. In sum, these witnesses may not be treated as "experts" for purposes of the present suit, and the designation of these witnesses as experts must be stricken. *Id.*

II. *A non-expert treating physician can be asked questions that implicate his expertise, but cannot be asked questions that do not relate to his treatment.*

■ Unless he has also been specifically retained as an expert, a treating physician's testimony is based on the physician's personal knowledge of the examination, diagnosis and treatment of a patient. *Baker,* 163 F.R.D. at 349. Nevertheless, a treating physician, even though he has not, through additional investigation, qualified himself as an "expert" for the purposes of litigation, may still be asked questions which implicate his expertise. *Id.* For example, he can be asked about the degree of injury in the future, or about anything else that was a necessary part of the patient's treatment. *Id.* He cannot, however, be asked to answer ques-

tions about medical issues not involved in his diagnosis and treatment. *Id.*

 The Plaintiffs in this case wish to ask several questions to the treating physicians about craniopharyngioma. It is proper for the Plaintiffs to ask these physicians whether or not they knew at the time of treatment about craniopharyngioma—such a question goes to the knowledge of the physician at the time of treatment. It is also proper to ask these physicians whether or not they considered craniopharyngioma as a possible diagnosis—such a question goes to the medical issues involved in diagnosis. And, if the witnesses say that they had considered and rejected a diagnosis of craniopharyngioma, then it would be proper for the witnesses to be closely questioned about why, in their expertise, craniopharyngioma was rejected—these questions again would go to the medical issues involved in diagnosis.

However, in the present case, all witnesses have said, or at least strongly implied, that they did not consider craniopharyngioma in reaching their diagnosis. In essence, this means that craniopharyngioma was not a medical issue involved in the diagnosis and treatment. Therefore, questioning these witnesses about craniopharyngioma is not proper, and the Court will deny the motion to compel. *See Id.*

III. *The Government cannot use the Code of Federal Regulations to assert a privilege.*

By holding that the Plaintiffs cannot designate treating physicians as expert witnesses, and by denying the Plaintiffs' motion to compel, the Court has resolved the legal issues present before it. Accordingly, the Court will not today decide whether the Code of Federal Regulations effectively prohibits the designated witnesses from testifying as experts. Nevertheless, given the importance of the question of whether the Code of Federal Regulations trumps the Federal Rules of Civil Procedure, the Court must offer the parties some guidance on how it would decide this issue were it presented in future litigation.

The regulation centrally at issue in this matter, 5 C.F.R. § 2635.805, restricts federal employees from serving as expert witnesses. The regulation reads in pertinent part:

> An employee shall not serve, other than on behalf of the United States, as an expert witness, with or without compensation, in any proceeding before a court or agency of the United States in which the United States is a party or has a direct and substantial interest, unless the employee's participation is authorized by the agency[.]

5 C.F.R. § 2635.805 (1997). The Defendant claims that since it has not authorized its doctors to testify as expert witnesses, their testimony is prohibited by this regulation. Thus, in essence, the Defendant asserts a privilege based upon the Code of Federal Regulations.

This purported privilege has been rejected by several courts. *Dean v. Veterans Administration,* 151 F.R.D. 83, 86–87 (N.D.Ohio 1993). *See also In re Air Crash Disaster at Detroit Metro Airport,* 737 F.Supp. 399, 404 (E.D.Mich.1989); *McElya v. Sterling Medical, Inc.,* 129 F.R.D. 510 (W.D.Tenn.1990). Indeed, to accept the Defendant's argument would be tantamount to improperly abdicating control over civil discovery to the caprice of executive officers. *See United States v. Reynolds,* 345 U.S. 1, 9–10, 73 S.Ct. 528, 533, 97 L.Ed. 727 (1953). Moreover, the history of 5 C.F.R. § 2635.805 reveals that this regulation was not designed to create an evidentiary privilege for the government, but rather was designed to guide federal employees in their behavior. *Dean,* 151 F.R.D. at 86–87. In other words, the language of the regulation itself is facially insufficient to create the very privilege the Defendant seeks to assert. Accordingly, the Court must conclude that the Code of Federal Regulations probably does not provide a privilege to the Defendant sufficient to stop one of its employees from testifying as an expert witness. *See Id.*

This conclusion does not mean, however, that federal employees are free to testify as expert witnesses against the United States in federal court without first obtaining the permission of their employing agencies. Testimony contrary to the provisions of 5 C.F.R.

§ 2635.805 invites prosecution for a violation of the Ethics In Government Act, 18 U.S.C. § 207. Moreover, because of the possibility of prosecution, a federal employee whose testimony would violate 5 C.F.R. § 2635.805 may invoke his Fifth Amendment privilege against self-incrimination in order to avoid giving testimony which could subject him to prosecution. *Cf. United States v. Kordel,* 397 U.S. 1, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970). In other words, the Government has the power to criminalize unauthorized, non-compelled expert testimony by its employees, and the employees have a right to avoid criminal prosecution by invoking the Fifth Amendment. Ultimately, however, the decision to invoke the Fifth Amendment's privilege must rest in the hands of the witness, and not in the hands of the witness's employer—even if that employer is the United States.

■ Additionally, Federal Rule of Civil Procedure 45(c) adequately protects government witnesses from being called to testify as expert witnesses against their will. Under Rule 45(c)(3)(B), a court may quash or modify a subpoena which calls for testimony by an unretained expert. *See* Advisory Committee Notes, Fed. R. Civ. Pro. 45. The Court's discretion in modifying a subpoena should be informed by several factors, including:

A. the degree to which the expert is being called because of his knowledge of facts relevant to the case rather than to give opinion testimony;

B. the difference between testifying to a previously formed opinion and forming a new one;

C. the possibility that the witness is a unique expert;

D. the extent to which the calling party is able to show the unlikelihood that any comparable witness will testify; and

E. the degree to which the witness is able to show that he has been oppressed by having to testify.

*See Kaufman v. Edelstein,* 539 F.2d 811, 822 (2nd Cir.1976). In the case of Government experts, some of these factors, or even all of them taken together, may well cause a Court to modify or quash a subpoena of an unwilling government expert in any particular case.

*Conclusion*

Accordingly, it is hereby ORDERED that the Defendant's Motion to Strike Designation of Expert Witnesses is GRANTED. It is further ORDERED that the Plaintiffs' Motion to Compel is DENIED. Finally, it is ORDERED that the Joint Motion for Oral Argument (filed January 1, 1997) and the Re-urged Motion for Oral Argument, filed June 12, 1997, are DENIED AS MOOT.